UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

LORIANNE PRATT,

                              Plaintiff,

                      v.

MEGAN J. BRENNAN, *Postmaster General*;
JERRY SHAPIRO,

                              Defendants.

No. 18-CV-4799 (KMK)

OPINION & ORDER

---

Appearances:

Steven Andrew Weg, Esq.
Alexander Markus, Esq.
Goldberg Weg & Markus PLLC
New York, NY
*Counsel for Plaintiff*

Alexander James Hogan, Esq.
Jennifer Ann Jude, Esq.
United States Attorney's Office
New York, NY
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

      Lorianne Pratt ("Plaintiff") brings this Action against Megan J. Brennan ("Brennan"), sued in her capacity as Postmaster General of the United States, and Jerry Shapiro ("Shapiro") (collectively, "Defendants"), alleging that Defendants discriminated against Plaintiff on the basis of race and sex and retaliated against Plaintiff for complaining of discrimination in violation of Title VII, 42 U.S.C. § 2000e, *et seq.*, and violated Plaintiff's rights under the Fourteenth Amendment, pursuant to 42 U.S.C. § 1983. (*See generally* Am. Compl. (Dkt. No. 23)). Before the Court is Defendants' Motion To Partially Dismiss the Amended Complaint (the "Motion"),

filed pursuant to Federal Rule of Civil Procedure 12(b)(6). (*See* Not. of Mot. (Dkt. No. 40).) For the reasons discussed below, the Motion is granted.

I. Background

A. Factual Background

The following facts are taken from Plaintiff's Amended Complaint and assumed to be true for the purposes of this Motion.

At all relevant times, Plaintiff was employed at the Walden Post Office by the United States Postal Service ("USPS"). (Am. Compl. ¶ 6.) Brennan, at all relevant times and currently, is the Postmaster General of the United States of America, the official head of the USPS. (*Id.* ¶ 11.) Shapiro, at all relevant times, was another USPS employee, titled "Post Office Operations Manager." (*Id.* ¶ 12.)

Plaintiff started working for the USPS in 1984 and has been employed by that agency for 34 years. (*Id.* ¶ 25.) At some point during her employment, Plaintiff held the position "Supervisor Customer Services" in Walden for eight years, a position that was denoted as Executive & Administrative Schedule ("EAS") level 17. (*Id.* ¶¶ 26–27.) In 2011, Plaintiff was involuntarily "detailed out," because, according to Plaintiff, human resources management had decided that there were not enough employees at Walden to require the existence of this supervisory role. (*Id.* ¶ 27.) However, the human resources manager allegedly told Plaintiff and others in similar positions that they would "get their jobs back should the positions be reinstated in the future." (*Id.* ¶ 28.)

Subsequently, on April 14, 2015, Plaintiff applied for a job posting for the position of Supervisor Customer Services in Walden (the "Supervisor Position"). (*Id.* ¶ 26.) At the time Plaintiff applied, she was occupying the role of "Office in Charge" ("OIC") at Walden, an EAS

2

level 20 position, on behalf of Linda Litz ("Litz"), who was out of the office on medical leave. (*Id.* ¶ 29.) While she held this position, Plaintiff bore the responsibilities of the OIC job but did not receive pay commensurate with an EAS level 20 position. (*Id.* ¶ 31.) Prior to covering Litz's medical absence, Plaintiff held an EAS level 17 position at the Fishkill office. (*Id.* ¶ 32.)

Plaintiff alleges that she applied for the Supervisor Position through an email request to Litz, Robert Lucas ("Lucas"), and Shapiro. (*Id.* ¶ 35.) On April 21, 2015, Plaintiff "followed up" with a letter addressed to Litz regarding the Supervisor Position. (*Id.* ¶ 37.) Plaintiff believes she was one of three candidates being considered for the Supervisor Position, and that the other two were women who "were of less experience and less qualified" than Plaintiff. (*Id.* ¶¶ 38–39.)

At some point, Shapiro, who had taken over a supervisor position within Plaintiff's district, met with all the supervisors and postmasters of Plaintiff's district. (*Id.* ¶ 40.) Shapiro stated that the purpose of that meeting was to "put names to the faces" of each individual within the district, and each employee stood up and introduced themselves. (*Id.* ¶ 41.) On April 29, 2015, Litz contacted Shapiro and allegedly recommended Plaintiff for the Supervisor Position. (*Id.* ¶ 43.) Shapiro allegedly responded that he would "interview them all." (*Id.* ¶ 44.) Plaintiff alleges that Shapiro did not conduct any interviews for the position, but, later, on May 28, 2015, Shapiro called Plaintiff and asked her to train Keith Waters ("Waters"), who would be starting at the Walden office beginning June 2, 2015. (*Id.* ¶¶ 45–46.) At that time, Plaintiff was not aware that Waters had allegedly received the Supervisor Position that she had applied for in April. (*Id.* ¶ 47.)

Waters allegedly told Plaintiff that he did not apply for the Supervisor Position and that, in fact, to him, the Walden office was inconveniently located. (*Id.* ¶ 48.) Waters also allegedly

3

told Plaintiff that he was being relocated because of a "stressful situation" he encountered in his previous position. (*Id.*) Waters retired soon after he started. (*Id.* ¶ 50.)

On June 4, 2015, Shapiro allegedly called Plaintiff and asked, "[O]kay, so what are we going to do with you?" in what Plaintiff describes as an "informal tone that was not usual or appropriate" for Shapiro to use with Plaintiff. (*Id.* ¶ 51.) Shapiro allegedly asked Plaintiff whether she would return to the Fishkill office, where she was positioned before she took on the job at Walden, a request that confused Plaintiff, and to which Plaintiff responded that she did not intend to do so. (*Id.* ¶ 52.) According to Plaintiff, she was still under the impression that she was a candidate for the Supervisor Position. (*Id.*) Shapiro then offered Plaintiff an OIC position at the Maybrook office, one for which Plaintiff did not apply. (*Id.* ¶ 53.) When Plaintiff hesitated, Shapiro stated, "Come on, I thought you were a team player," and then said, "If you don't go to Maybrook, then it's back to Fishkill." (*Id.* ¶¶ 53–54.) Later, Plaintiff allegedly told Shapiro that she would "help out" by taking the OIC position at Maybrook. (*Id.* ¶ 55.) However, Plaintiff was then informed by her former supervisor at Fishkill that she would be returning to her position at Fishkill once Litz returned from medical leave and resumed her position at Walden. (*Id.* ¶ 56.)

Also on June 4, 2015, Plaintiff learned that the Supervisor Position had been offered to someone "outside of the protected class." (*Id.* ¶ 57.) On June 6, Plaintiff filed a charge of discrimination the Equal Employment Opportunity Commission ("EEOC"), alleging discrimination on the basis of age, race, color, and gender and retaliation based on "adverse and discriminatory action taken against her by [USPS]." (*Id.* ¶ 58.) Plaintiff filed the charge at least partly because a "high ranking co-worker" "implied" to Plaintiff that discrimination "was the only possible reason" that Plaintiff had not been given the Supervisor Position. (*Id.* ¶ 59.)

4

Plaintiff also alleges that she then learned, contrary to what Waters had told her earlier, that he had requested to be reassigned to the Walden office through a letter "back dated to May 28, 2015." (*Id.* ¶ 60.)

Plaintiff further alleges, without specifying how, that following the filing of the EEOC complaint, Plaintiff "experienced a hostile work environment." (*Id.* ¶ 63.) She claims she was not considered or interviewed for "the positions [for] which she applied." (*Id.*) Plaintiff alleges upon information and belief that Shapiro was aware of the charges she had filed with the EEOC. (*Id.* ¶ 64.)

On September 4, 2015, Plaintiff was informed by the EEOC that there was "no resolution" to her June request for pre-complaint counseling and instead directed her to file a formal complaint. (*Id.* ¶¶ 65–66.) On September 13, 2015, Plaintiff did file a formal EEOC complaint. (*Id.* ¶ 67.) On September 30, 2015, Plaintiff sent an email to Shapiro asking that she be considered for the position of OIC, an EAS level 20 position, at the Fishkill and "RMPO Chelsea" offices. (*Id.* ¶ 68.) Plaintiff avers that even though her manager, who was leaving that position at Fishkill, recommended that Plaintiff replace him, and even though Plaintiff was allegedly the "most qualified" for that job, Plaintiff's application was denied as a form of retaliation against her for filing the EEOC complaint. (*Id.* ¶¶ 69–71.) Plaintiff alleges that the Fishkill position was later filled by an individual who then asked to be removed from the job, "citing stress." (*Id.* ¶ 72.) Plaintiff alleges that she applied for EAS level 17 and 20 positions "approximately a dozen times," was interviewed over ten times, and was denied each time. (*Id.* ¶ 73.)

Plaintiff further alleges that USPS and the individual Defendants were aware of her ongoing engagement with the EEOC regarding her complaints of discrimination and retaliation.

5

(*Id*. ¶¶ 74–77.) Plaintiff alleges that USPS engages in a "pattern and practice of discrimination" by "failing to assign its minority employees" to "more desirable and better paying jobs while reserving such jobs for employees under the age of forty." (*Id*. ¶ 81.)

Based on the above facts, Plaintiff alleges violations of her rights under Title VII and 42 U.S.C. § 1983. (*Id*. ¶¶ 93–124.)

B. Procedural Background

Plaintiff initiated this Action by filing the Complaint on May 31, 2018. (*See* Compl. (Dkt. No. 5).)[1] Following a Pre-Motion Conference in December 2018, the Court ordered Plaintiff to file an amended complaint. (*See* Dkt. (minute entry for Dec. 19, 2018).) Plaintiff filed the operative Amended Complaint on January 22, 2019. (*See* Am. Compl.) Following another Pre-Motion Conference, (Dkt. (minute entry for Mar. 6, 2019)), the Court approved a joint proposal from the Parties indicating that Plaintiff had voluntarily dismissed her negligent infliction of emotional distress claim in its entirety and her § 1983 claim against then-Defendant Richard Conte ("Conte"), (Dkt. No. 35).[2] As a result, Conte was dismissed without prejudice from the Action, along with Count Five of the Amended Complaint. (*Id*.)

Subsequently, Defendants filed the instant Motion on June 17, 2019. (*See* Not. of Mot.; Defs.' Mem. in Supp. of Mot. ("Defs.' Mem.") (Dkt. No. 41).) Although Plaintiff's Opposition Memorandum is signed June 3, 2019, according to the docket, it was filed on June 18, 2019. (*See* Pl.'s Mem. in Opp'n to Mot. ("Pl.'s Mem.") (Dkt. No. 43).) Defendants' Reply was filed

---

[1] Due to a filing error, Plaintiff refiled the Complaint as Docket No. 5 on June 1, 2018.

[2] Although the Memo Endorsement refers to an "intentional" infliction of emotional distress claim, both the March 3, 2019 Letter and the Amended Complaint only mention a negligent infliction of emotional distress claim. Therefore, the voluntary dismissal applied to what is referred to as Count Five in the Amended Complaint, the negligent infliction of emotional distress claim. (*See* Dkt. No. 35; Am. Compl. ¶¶ 125–28.)

6

on June 17, 2019. (*See* Defs.' Reply Mem. in Supp. of Mot. ("Defs.' Reply Mem.") (Dkt. No. 42)).)

## II. Discussion

Defendants move to dismiss Plaintiff's Title VII hostile work environment claim and Plaintiff's 42 U.S.C. § 1983 claims. (*See* Defs.' Mem. 1.) Defendants argue that Plaintiff has not plausibly alleged the existence of a hostile work environment under Title VII, (*id*. at 5), and that neither § 1983 claims nor claims under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), are legally cognizable, (*id*. at 8). Plaintiff counters that her repeated rejections from higher-level positions, along with purported allegations of "harassing and discriminatory conduct" are sufficient to state a hostile work environment claim, (Pl.'s Mem. 7–8), and that her § 1983 claim should be converted into a *Bivens* claim, (*id*. at 9).[3]

### A. Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and quotation marks omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and quotation marks omitted). Instead, a complaint's "[f]actual allegations must be enough to raise a right to

---

[3] Because Plaintiff's Memorandum does not have native pagination, the Court refers to the ECF-stamped page numbers appearing on the upper right corner of each page.

7

relief above the speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

In considering Defendants' Motion, the Court is required to "accept as true all of the factual allegations contained in the [C]omplaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (same). The Court must also "draw[] all reasonable inferences in favor of the plaintiff." *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Further, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (quotation marks omitted).

B.  Analysis

1.  Hostile Work Environment Claim

Title VII makes it unlawful for an employer to "discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race [or] color."  42 U.S.C. § 2000e-2(a)(1).  To state a hostile work environment claim under Title VII, a plaintiff must plead conduct that "(1) is objectively severe or pervasive—that is, creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's [protected status]."  *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007) (citation, alterations, and quotation marks omitted); *see also Ruiz v. City of N.Y.*, No. 14-CV-5231, 2015 WL 5146629, at *8 (S.D.N.Y. Sept. 2, 2015) (same).  To survive a Rule 12(b)(6) motion, "a plaintiff need only plead facts sufficient to support the conclusion that she was faced with harassment of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse."  *Patane*, 508 F.3d at 113 (alteration and quotation marks omitted).  "The Second Circuit has 'repeatedly cautioned against setting the bar too high' in this context."  *Ruiz*, 2015 WL 5146629, at *8 (quoting *Patane*, 508 F.3d at 113).

For a hostile work environment claim—which is distinct from discrete acts of discrimination—the actions taken by the defendant "must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive."  *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002) (citation and quotation marks omitted).  In evaluating hostile work environment claims, courts consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it

unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993); *see also Ruiz*, 2015 WL 5146629, at *8 (same).  The Second Circuit "treats the first two of these factors—the frequency and the severity of the misconduct—as the principal focus of the analysis." *Aulicino v. N.Y.C. Dep't of Homeless Servs.*, 580 F.3d 73, 82 (2d Cir. 2009).  "Core hostile work environment cases involve misconduct that is both frequent and severe, for example, when a supervisor utters blatant racial epithets on a regular if not constant basis and behaves in a physically threatening manner." *Id.* (citation and quotation marks omitted).  Finally, "[i]t is axiomatic that the plaintiff also must show that the hostile conduct occurred because of a protected characteristic." *Richards v. N.Y.C. Dep't of Educ.*, No. 13-CV-16, 2015 WL 4164746, at *10 (S.D.N.Y. July 10, 2015) (citations and quotation marks omitted).

Here, Plaintiff has failed to plausibly allege a hostile work environment claim.  Plaintiff argues that the Amended Complaint includes "allegations of harassing and discriminatory conduct," but the Court finds no such specific allegations in the Amended Complaint.  (Pl.'s Mem. 8; *see generally* Am. Compl.)  Although Plaintiff alleges that she was repeatedly denied positions for which she was qualified, (Am. Compl. ¶¶ 63, 73), other than a conclusory statement that Plaintiff "experienced a hostile work environment," no other allegations of incidents of race or gender-based harassment appear in the Amended Complaint, (*id.* ¶ 63).  To the extent Plaintiff seeks to rely on Shapiro's statements requesting Plaintiff to take a position in Maybrook and speaking in an "informal tone" to Plaintiff, there are no allegations indicating that they were insults, let alone insults based on sex, race, or age.  (*Id.* ¶¶ 51–54.)  Simply stating that Plaintiff "experienced a hostile work environment" is not enough to plausibly allege a hostile work environment claim, as the Court "need not credit her mere conclusions that a hostile work

environment . . . has existed and been pervasive" at USPS. *Salas v. N.Y.C. Dep't of Investigation*, 298 F. Supp. 3d 676, 681 (S.D.N.Y. 2018) (quotation marks omitted) (dismissing the plaintiff's hostile work environment claims because the plaintiff's conclusory allegation that she was "repeatedly mocked" for her religion failed to specify "whether anyone at her office mocked her or others; what the mocking consisted of; how the mocking affected the conditions of her work environment, if at all; or how often the purportedly repeated mocking occurred" (citation and quotation marks omitted)); *see also Alleyne v. NAACP Legal Defense and Educ. Fund, Inc.*, No. 14-CV-6675, 2015 WL 6869731, at *11 (E.D.N.Y. Nov. 6, 2015) ("While Plaintiff asserts that she was harassed by her coworkers, she does not indicate *how* she was harassed or allege any specific conduct. Plaintiff therefore fails to state a hostile work environment claim." (citation omitted) (emphasis in original)).

What remains is the argument that Plaintiff's repeated rejections from jobs that she was purportedly qualified for constitute a hostile work environment. (*See* Pl.'s Mem. 8.) However, this theory of a hostile work environment claim has been rejected by courts in the Second Circuit. In *Olivier v. County of Rockland*, No. 15-CV-8337, 2018 WL 401187 (S.D.N.Y. Jan. 11, 2018), the plaintiff was similarly only able to point discrete decisions by his superiors regarding "baseless disciplinary charges" in support of his hostile work environment claim. 2018 WL 401187, at *5 (quotation marks omitted). The court recognized there, that although they might have constituted separate acts of discrimination, they could not be strung together and "repackage[d]" into a hostile work environment claim, which was "not the proper vehicle for such claims." *Id*. (citations omitted). Although *Olivier* primarily discussed these differences in the context of resolving a statute of limitations issue, the timeliness analysis also reveals the underlying functional and theoretical differences between the two kinds of claims.

Fundamentally, "[h]ostile environment claims are different in kind from discrete acts." *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002). Although Plaintiff seeks to rely on the repetitive nature of the alleged rejections she faced from various promotions, "multiple incidents of discrimination, even similar ones" do not amount to a "continuing violation," *Lambert v. Genesee Hosp.*, 10 F.3d 46, 53 (2d Cir. 1993), *overruled on other grounds by Greathouse v. JHS Sec. Inc.*, 784 F.3d 105 (2d Cir. 2015), and it is precisely the "continuous and concerted" nature of the alleged acts that make something "pervasive" enough to constitute a hostile work environment, as opposed to "episodic" instances of discrimination, *Olivier*, 2018 WL 401187, at *4 (citations omitted). "Discrete acts such as . . . failure[s] to promote . . . are easy to identify," *Magadia v. Napolitano*, No. 06-CV-14386, 2009 WL 510739, at *11 (S.D.N.Y. Feb. 26, 2009) (citing *Morgan*, 536 U.S. at 114), and therefore cannot be covered by a hostile work environment claim, which seeks to protect plaintiffs from the more ambiguous and amorphous nature of "a general work atmosphere" that facilitates improper discriminatory animosity, *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997) (citation omitted). Therefore, Plaintiff's hostile work environment claim is dismissed. *See Calise v. N.Y. State Dep't of Motor Vehicles*, No. 17-CV-791, 2018 WL 4350247, at *7 (S.D.N.Y. Sept. 12, 2018) (dismissing hostile work environment claim based on allegations concerning "the denial of overtime opportunities and disciplinary decisions allegedly taking on account of [the plaintiff's] race" because they were "discrete, adverse employment decisions," and noting that the few comments that were specifically quoted in the complaint were "not insults"); *Guy v. MTA N.Y. City Transit*, 407 F. Supp. 3d 183, 196 (E.D.N.Y. Sept. 23, 2016) (dismissing hostile work environment claim where the plaintiff referred "repeatedly to his demotion, suspension, and [the d]efendant's failure to promote him" because they constituted "discrete discriminatory acts

rather than repeated and pervasive conduct" (citation omitted)); *Trezza v. Hartford, Inc.*, No. 98-CV-2205, 1998 WL 912101, at *4 (S.D.N.Y. Dec. 30, 1998) ("The failure to promote [the] plaintiff is not, however, a factor relating to her workplace environment and, in any event, is pleaded separately in [other counts]." (quotation marks omitted)).

### 2. Section 1983 Claim

Section 1983 "deals only with those deprivations of rights that are accomplished under the color of the law of any State or Territory." *District of Columbia v. Carter*, 409 U.S. 418, 424 (quotation marks and footnote omitted). This has been interpreted to mean that "actions of the *Federal* Government and its officers are at least facially exempt from its proscriptions." *Id*. at 424–25 (emphasis added); *see also Omosefunmi v. Weiss*, 198 F.3d 234 (Table), 1999 WL 973516, at *1 (2d Cir. Sept. 30, 1999) (noting that § 1983 does not apply to "employees of the federal government"). Therefore, any § 1983 claims are not cognizable as pled, since both named Defendants are employees of the federal government. (Am. Compl. ¶¶ 11–12.)

Courts may sometimes convert improperly asserted § 1983 claims into *Bivens* claims. *See, e.g.*, *Kingsley v. Bureau of Prisons*, 937 F.2d 26, 30–32 (2d Cir. 1991) (affirming district court's dismissal of a *Bivens* claim where the pro se plaintiff had initially complained of a § 1983 violation); *Hightower v. United States*, 205 F. Supp. 2d 146, 154, 154 n.4 (S.D.N.Y. 2002) (converting claims brought pursuant to § 1983 into *Bivens* claims because the action was against the "federal government or federal employees acting under federal law" (citation omitted)). The Court notes that Plaintiff is counseled and that Plaintiff was already given an opportunity to amend the Complaint; the Court does not owe Plaintiff or her counsel the "special solicitude" given to pro se plaintiffs who lack legal training and may therefore inadvertently plead the wrong statute or doctrine. *Triestman v. Federal Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir. 2006)

13

(citation and quotation marks omitted). Nevertheless, out of an abundance of caution and because Defendants have briefed the issue, the Court will consider whether Plaintiff's § 1983 claims against Defendants are cognizable under *Bivens*.

In short, they are not. Plaintiff's *Bivens* claims rest on the same facts as her employment discrimination claims, i.e., they allege that Defendants discriminated against her on the basis of her race, sex, or both when they improperly denied her promotions for which she applied. (*See* Am. Compl. ¶¶ 117–22.) In *Bivens*, "the Supreme Court 'recognized for the first time an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights.'" *Arar v. Aschcroft*, 585 F.3d 559, 571 (2d Cir. 2009) (quoting *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001)); *see also M.E.S., Inc. v. Snell*, 712 F.3d 666, 671 (2d Cir. 2013) (same). "The purpose of the *Bivens* remedy is to deter individual federal officers from committing constitutional violations." *Arar*, 585 F.3d at 571 (quotation marks omitted). A remedy under *Bivens* "is a judicially created remedy," and, therefore, "federal courts have been reluctant to recognize such implied relief." *M.E.S.*, 712 F.3d at 671. The Supreme Court has explained that "consideration of a *Bivens* request follows a familiar sequence that involves two inquiries: (1) whether there is 'any alternative, existing process for protecting the' affected interest that 'amounts to a convincing reason for the Judicial Branch to refrain from providing a new damages remedy'; and (2) whether, 'even in the absence of such alternative, . . . any special factors counsel hesitation before authorizing a new kind of federal litigation.'" *Id.* (quoting *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007)) (alterations omitted).

As other courts in the Second Circuit have recognized, Plaintiff's alleged injuries are covered through an alternate remedy, i.e., Title VII, obviating the need to open up *Bivens* actions

to Title VII plaintiffs.[4]  Because Title VII provides Plaintiff with a remedy, she "need not and cannot resort to a *Bivens* claim for [her] alleged [employment] discrimination" claims.  *Corbett v. Napolitano*, 897 F. Supp. 2d 96, 121 (E.D.N.Y. 2012) (citation omitted); *see also Johnson v. Lew*, No. 13-CV-1072, 2015 WL 4496363, at *5 (N.D.N.Y. July 23, 2015) (dismissing *Bivens* claim where the plaintiff did not oppose the legal argument that Title VII was the "sole and exclusive remedy for a claim of federal employment discrimination"); *Nghiem v. U.S. Dep't of Veterans Affairs*, 451 F. Supp. 2d 599, 603 (S.D.N.Y. 2006) ("Title VII is the *exclusive* remedy for employment discrimination by the federal government on the basis of race, religion, sex, or national origin." (collecting cases) (alteration and quotation marks omitted)); *Weiner v. Drug Enforcement Admin.*, No. 90-CV-5368, 1991 WL 221088, at *4 (S.D.N.Y. Oct. 16, 1991) (dismissing *Bivens* claim and noting that "Title VII was intended as the exclusive, pre-emptive administrative and judicial scheme for the redress of federal employment discrimination." (citing *Brown v. General Servs. Admin.*, 425 U.S. 820, 829 (1976)) (quotation marks omitted)).  Moreover, like in *Johnson*, 2015 WL 4496363, Plaintiff fails to address this legal argument entirely, stating only that the Court should convert any § 1983 claims to *Bivens* claims without responding to the argument that a *Bivens* claim is not cognizable in this context, given the availability of Title VII remedies.  (Pl.'s Mem. 9.)  Although Plaintiff conclusorily states that a *Bivens* claim may not be precluded by a concurrent Title VII claim "when the former is based on

---

[4] This is an especially important consideration as the Supreme Court has recently reiterated that "expanding the *Bivens* remedy is now a disfavored judicial activity."  *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1857 (2017) (citation and quotation marks omitted).  "This is in accord with the [Supreme] Court's observation that it has consistently refused to extend *Bivens* to any new context or new category of defendants.  Indeed, the [Supreme] Court has refused to do so for the past 30 years."  *Id*. (citation omitted) (collecting cases, including *Chappell v. Wallace*, 462 U.S. 296, 297, 304–05 (1983), a case where the Supreme Court declined to fashion a *Bivens* remedy for allegations of race-based employment discrimination in the military).

substantive rights distinct from Title VII," (Pl.'s Mem. 10), Plaintiff makes no effort at all to articulate what exactly these purportedly distinct substantive rights are in this case. Indeed, the Court sees none. Accordingly, the Court dismisses Count Four of the Amended Complaint, whether brought under § 1983 or *Bivens*.

Therefore, the only claims that remain in the case are Plaintiff's claims of discrimination and retaliation based on sex and race under Title VII. (*See* Am. Compl. ¶¶ 93–116.)[5] Defendants are also correct that "the only proper defendant in actions brought by a federal employee under Title VII . . . is the head of the agency being sued." *Francis v. Brennan*, No. 15-CV-3726, 2016 WL 3093984, at *2 (S.D.N.Y. June 1, 2016) (alteration and quotation marks omitted); *see also* 42 U.S.C. § 2000e-16(c) (instructing that, in "civil action[s,] the head of the department, agency, or unit, as appropriate, shall be the defendant"). Accordingly, Brennan, the Postmaster General, is the only appropriate Defendant, and Shapiro is dismissed from the case entirely.

### III. Conclusion

For the reasons stated above, Defendants' Motion To Partially Dismiss is granted. The dismissed claims—any hostile work environment claim and Count Four of the Amended Complaint—and the dismissed Defendant, Shapiro, are dismissed with prejudice. As Plaintiff is counseled and has already been given an opportunity to amend the Complaint in the face of similar arguments made by Defendants regarding the original Complaint, (*see* Dkt. No. 14 at 2 n.4, 3), the Court sees no reason to provide Plaintiff with a second opportunity to amend. *See*

---

[5] Plaintiff refers to age discrimination at one point in her Amended Complaint, (Am. Compl. ¶ 58), and alleges that USPS reserves its better jobs for employees under the age of forty, (*id*. ¶¶ 81–82), but does not plead age-based discrimination in any of her Title VII Counts, (*see id*. ¶¶ 93–116). Accordingly, the Court concludes that no such claim exists.

*Denny v. Barber*, 576 F.2d 465, 471 (2d Cir. 1978) (holding that the plaintiff was not entitled to "a third go-around"); *Melvin v. County of Westchester*, No. 14-CV-2995, 2016 WL 1254394, at *24 n.19 (S.D.N.Y. Mar. 29, 2016) (granting motion to dismiss with prejudice where "[the] [p]laintiff has already had two bites at the apple, and they have proven fruitless" (alteration and quotation marks omitted)). The Court will hold a Status Conference as to the remaining claims on February 13, 2020 at 11:00 a.m.

The Clerk is respectfully directed to terminate the pending Motion. (Dkt. No. 40.)

SO ORDERED.

DATED: January 21, 2020
White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE